**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HEATH GRAY,** | : | **CIVIL NO. 3:14-CV-1595** |
| | : | |
| **Petitioner** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **ROBERT GILMORE,** *et al.*, | : | |
| | : | |
| **Respondents** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**MEMORANDUM**

Petitioner Heath Gray ("Gray") a Pennsylvania state inmate currently housed at the

State Correctional Institution at Greene, Waynesburg, Pennsylvania, commenced this action

on August 14, 2014, with the filing of a *pro se* petition (Doc. 1) for writ of habeas corpus

pursuant to 28 U.S.C. § 2254, and a supporting memorandum of law (Doc. 2).  He challenges

the Judgment of Sentence entered on October 31, 2003, in Court of Common Pleas of

Lycoming County Criminal case number CP-41-CR-922-2002.

The petition is now ripe for disposition and, for the reasons that follow, the petition

will be denied.

**I.    Background**

The Superior Court of Pennsylvania, in relying on the trial court's recitation of the

facts and the certified record, set forth the following background:

> Dianna Blase (Ms. Blase), the mother of the five-year-old victim, Kalib
> (Kalib), testified that she and Kalib lived with Heath Brink (Brink) at his father's
> house at 1486 Mt. Carmel Street, Williamsport.  She and Kalib were watching TV

until about 8:30 p.m. when Brink returned home from work.  Brink took Kalib to his bed; he and Ms. Blase went to bed around 9:00 p.m.  Ms. Blase further testified that the stove had not been used that evening.  She woke up to the sound of "dinging" and was told that the house was on fire.  She described the layout of the home; specifically, the doorway between the kitchen and the middle room, or "TV room," was a regular doorframe and just opposite the frame was a swivel chair and loveseat.  Ms. Blase testified that she had never met Appellant.

Brink testified similarly to Ms. Blase with regard to the layout of the house.  He also testified that his father lived in the house with them, but had left for work about 10:40 p.m., and that his grandfather lived on the 1488 side of the double house.  That evening, Brink came home from work in his Chevy S10 pick up truck about 8:30 p.m.  He secured the back door leading directly into the kitchen area, but not the door from the kitchen onto the enclosed back porch.  He awoke to the sound of glass breaking and the smell of smoke inside the residence.  Brink attempted to leave his room to rouse Kalib, but he burned his hand on the doorknob and encountered thick black smoke.  He and Ms. Blase left the residence through the back window of the bedroom onto the back porch and were helped from the house by members of the Williamsport Bureau of Fire.  At that time, Brink was able to see the east side of the house.  There he observed flames coming from the middle room, first floor of the house, with the fire coming out and going up to Kalib's room.  Later that morning, Brink returned to the scene to take his truck and discovered that two tires on the driver's side were flattened.  Brink also testified that he, too, had never met Appellant.

(Doc. 19-2, pp. 1-3).  Gray and his co-defendant, Keith Young, surreptitiously entered the

home of Ms. Blase, Young's ex-girlfriend, and set it on fire.  (Doc. 1-1, p. 17).  This resulted

in the death of Ms. Blase's five-year-old son, Kalib.  (Id.)  Young was the father of the child.

(Id.)

The following procedural background was set forth in the Superior Court's most

recent opinion addressing Gray's appeal from the PCRA Court order of June 14, 2012:

[Gray] was charged with, *inter alia*, a general count of homicide.  N.T. Waiver of Jury Trial, 9/19/03, at 6.  At the hearing to waive his right to a jury trial, the Commonwealth indicated it would withdraw its notice to seek the death penalty if Appellant proceeded with a nonjury trial.  *Id.* at 5.  Later at trial, in

closing argument, the Commonwealth indicated it would not pursue a first-degree murder conviction. N.T. Trial, 10/27-31/03, at 255.

In October of 2008, the Honorable Nancy L. Butts conducted a bench trial. One of the Commonwealth's witnesses was Matthew Oldt, a firefighter with the Old Lycoming Township Volunteer Fire Department who responded to the fire. *Gray*, 1794 MDA 2003 at 3. Immediately prior to Mr. Oldt's testimony, Judge Butts advised that she was a member of the same fire company, was most recently at the fire hall for a carnival five months earlier, and served on a banquet committee with Mr. Oldt. *See* N.T. Trial at 47. However, the judge state, she had not attended a meeting nor had "any contact with the fire hall since [the] carnival" because she "knew that the matter was still pending." *Id.* at 47-48. Neither party made any response to this information. *See id.* at 48. Furthermore, Mr. Oldt's sister-in-law was the victim/ex-girlfriend who survived the fire. *Id.* At the scene of the fire, Mr. Oldt found the child, who was his nephew, unresponsive and brought him downstairs.

Appellant did not testify at trial. The court found him guilty of murder in the second degree, conspiracy, recklessly endangering another person, arson, and burglary. The court imposed a sentence of life imprisonment without parole for the second-degree murder conviction and an aggregate, concurrent term of one to two years on the remaining offenses.

Appellant appealed, and this Court affirmed the judgment of sentence on January 21, 2005. Gray, 1794 MDA 2003. Specifically, we found no merit to his first two issues – the sufficiency of the evidence for second-degree murder and admission of his statements to police. Appellant's third claim was the Judge Butts "should have recused herself because she was a co-volunteer of the . . . witness, Oldt." *Id.* at 9. However, Appellant admitted in his appellate "brief that he did not file a motion to recuse on his own behalf, but claim[ed] that he joined in a motion for recusal filed by [his] co-defendant. This Court observed:

> [W]e are concerned by the trial judge's decision to sit as trier-of-fact in this case . . .

> [T]he fact that the trial judge was a volunteer of the same fire department as a witness who was a first responder to the fire and the victim's uncle raises the appearance of impartiality, especially in light of the trial court's role as the finder-of-facts . . .

*Id.* at 10-11. Nevertheless, this Court held that Appellant's recusal claim was

3

waived "because counsel has not properly preserved the issue." *Id.* at 11. Appellant sought allowance of appeal with the Pennsylvania Supreme Court, which was denied on May 9, 2006.

On February 11, 2007, Appellant filed a *pro se*, timely first PCRA petition. Judge Butts appointed counsel to represent Appellant. While there is no indication in the record that counsel filed an amended PCRA petition or a *Turner/Finley* letter, Appellant filed a *pro se* "Response to Counsel's No Merit Letter: Motion for Appointment of Alternate Conflict Counsel and Request for Evidentiary Hearing." *Gray*, 1910 MDA 2007 at 3. Judge Butts then issued Pa.R.Crim.P. 907(1) notice of intent to dismiss the PCRA petition without a hearing. The notice referred to a *Turner/Finley* letter, noted the court's "agreement with counsel that [Appellant] failed to raise any meritorious issues in his *pro se* petition," but did not grant any request to withdraw and did not address Appellant's *pro se* request for new counsel. *Id.* at 3-4 & n.10, n.11. Appellant filed a *pro se* response, and Judge Butts dismissed the PCRA petition.

Appellant then took a *pro se* appeal with this Court, rasing four claims of trial counsel's ineffectiveness, for: (1) failing to request recusal of the trial judge and thus failing to preserve the issue for appellate review; (2) persuading or coercing him to waive his right to a jury trial; (3) providing "unreasonable advice [ ] to forego testifying in his own behalf[;]" and (4) "harbor[ing] personal antipathy toward" him. Id. at 5. Lastly, Appellant averred the PCRA court erred in failing to hold an evidentiary hearing.

In a memorandum filed on October 17, 2008, this Court first addressed Appellant's recusal/ineffectiveness issue. We concluded, "Given this strong statement on our part, we do not understand how both [Appellant's] PCRA counsel and the PCRA court so readily found this claim to be either patently frivolous or without arguable support in the record." *Id.* at 9. We then reasoned that Appellant's

second and third claims of ineffectiveness are closely tied to his first claim. With respect to [Appellant's] second claim, as the PCRA court notes, the Commonwealth agreed not to seek the death penalty in return for [Appellant's] agreeing to a bench trial. Our review of the record demonstrates that there is at least a basis for inquiry as to whether the Commonwealth would have proceeded with seeking the death penalty given the Commonwealth's admission that the evidence at trial was not sufficient to sustain a conviction of murder in the first degree. [N.T. Trial] at 255. Further, as we have noted above, given that this decision placed

[Appellant] in a position of having his case decided by a trial judge whose impartiality [Appellant] doubted, we cannot agree that these claims are so patently frivolous as to merit dismissal without a hearing.

With respect to [Appellant's] final claim, his assertion that his mother would testify that his trial counsel told her that he believed [Appellant] should die in prison, if believed, would cast doubt as to the strategic basis of counsel's decisions in this matter. We recognize that the credibility of [Appellant's] mother is a determination for the factfinder, who, in this matter is the PCRA judge . . . However, as [Appellant] was denied the opportunity to present his mother as a witness, the PCRA judge did not have an opportunity to view her demeanor and properly evaluate her credibility.

*Id.* at 8-9.

This Court concluded that the PCRA court erred in dismissing Appellant's petition without a hearing, reversed the order denying relief, and remanded "for appointment of new counsel and an evidentiary hearing." *Id.* at 9. The only additional instruction provided by this Court was: "A threshold issue for the PCRA court's consideration is whether a judge other than Judge Butts should hear this matter.'" *Id.* at 9, n.12.

On December 23, 2008, a PCRA judge, not Judge Butts, appointed Edward J Rymsza, Esq. to represent Appellant. Rather than litigating the issues remanded by this Court, however, Attorney Rymsza sought leave to amend Appellant's PCRA petition and raise additional grounds for PCRA relief. The court granted this motion, and Attorney Rymsza eventually filed an amended petition on December 1, 2009.

Fourteen months thereafter, on February 14, 2011, the PCRA court, with a specially presiding judge, held a PCRA hearing. It held a second hearing on May 6th. Appellant, his trial counsel, the prosecuting assistant district attorney at trial, and Judge Butts testified. Two months after the latter hearing, Attorney Rymsza sought an extension to file a brief in support of Appellant's PCRA petition, and ultimately filed the brief on October 7, 2011. The Commonwealth filed a reply brief two months later.

On June 14, 2012, the PCRA court entered the underlying order denying Appellant's petition. Appellant took the instant appeal, represented by Attorney Rymsza. He presents eight issues for our review, whether the PCRA court erred

5

in not finding: (1) trial counsel was ineffective for failing to request recusal of Judge Butts, where the judge had an association with the witness Mr. Oldt and had ruled on Appellant's suppression motion; (2) Appellant's constitutional rights were violated by the Commonwealth's assertion of a baseless death penalty charge to secure waiver of a jury trial; (3) trial counsel was ineffective for advising him to waive his right to a jury trial; (4) trial counsel was ineffective for failing to move for a mistrial when the Commonwealth stated the evidence was insufficient for first-degree murder; (5) trial counsel was ineffective for not making a pre-trial challenge to the first-degree murder charge; (6) trial counsel was ineffective for not calling Appellant to testify at trial; (7) trial counsel was ineffective for not investigation and presenting an intoxication defense; and (8) the cumulative prejudicial effect of counsel's failings merited a new trial.

(Doc. 1-1, pp. 17-24).  The Superior Court concluded that his second issue, that his constitutional rights were violated by the Commonwealth's assertion of a baseless death penalty charge to secure waiver of a jury trial, and his eighth issue, the cumulative prejudicial effect of counsel's failings merited a new trial, were waived.  The order of the PCRA court denying Gray relief in all other respects was affirmed.  (Doc. 1-1, p. 25; Doc. 1-2, pp. 7, 18).

Gray timely filed a petition for allowance of appeal.  The Pennsylvania Supreme Court denied the petition on June 14, 2014.

## II.    **Grounds for Relief**

Gray filed the instant petition on August 14, 2014, seeking relief on the following grounds:

Ground One: Trial counsel provided ineffective assistance of counsel where counsel failed to request recusal of Judge Butts

Ground Two: PCRA counsel was ineffective in failing to call Mr. Oldt as a witness at the PCRA hearing to rebut Judge Butts on the recusal decision.

Ground Three: Gray's right to a jury trial was violated by the use of an illusory threat of the death penalty.

Ground Four: Trial counsel was ineffective in advising Gray to waive a jury trial.

Ground Five: Gray received ineffective assistance where trial counsel failed to make any pre-trial challenge to the first degree murder case.

Ground Six: Trial counsel was ineffective in failing to move for a mistrial.

Ground Seven: Gray received ineffective assistance where trial counsel advised him not to testify in his defense.

Ground Eight: Trial counsel was ineffective in failing to properly investigate and present an intoxication defense.

Ground Nine: PCRA counsel was ineffective for failing to raise the cumulative effect of previous counsel's errors.

(Doc. 2, pp. 16, 24; Doc. 2-1, pp. 1, 8, 13, 15, 17, 19, 23).

## III.   **DISCUSSION**

By limiting habeas relief to state conduct which violates "the Constitution or laws or treaties of the United States," § 2254 places a high threshold on the courts.  Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings resulted in a "fundamental defect which inherently results in a complete miscarriage of justice" or was completely inconsistent with rudimentary demands of fair procedure.  See, e.g., Reed v. Farley, 512 U.S. 339, 354 (1994).

The state courts must have the first opportunity to redress any claimed violation of a habeas petitioner's federal rights.  Picard v. Connor, 404 U.S. 270, 275–76 (1971).  The habeas statute codifies this principle by requiring that a petitioner exhaust the remedies available in the courts of the State.  28 U.S.C. § 2254(b)(1)(A).  Therefore, a  state prisoner must "fairly present" his claims in "one complete round of the state's established appellate

review process," before bringing them in federal court.  O'Sullivan v. Boerckel, 526 U.S.

838, 845 (1999) (stating "[b]ecause the exhaustion doctrine is designed to give the state

courts a full and fair opportunity to resolve federal constitutional claims before those claims

are presented to the federal courts,  . . .  state prisoners must give the state courts one full

opportunity to resolve any constitutional issues by invoking one complete round of the

State's established review process); see also Duncan v. Henry, 513 U.S. 364, 365 (1995);

Picard, 404 U.S. at 275 (1971); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir.1997).

### A.      Procedural Default

#### 1.      Fair Presentation

A petitioner has exhausted a federal claim only if he or she presented the "substantial

equivalent" of the claim to the state court.  Picard, 404 U.S. at 278; see also McCandless v.

Vaughn, 172 F.3d 244, 261 (3d Cir. 1999) (holding that petitioner must present both "factual

and legal substance" of claim to state courts).  The exhaustion requirement would "serve no

purpose if it could be satisfied by raising one claim in the state courts and another in the

federal courts."  Picard at 276.  Notably, the federal claims raised in the state courts need not

be identical to the claims now pursued in federal court.  Id. at 277 (recognizing that petitioner

is entitled to "variations in the legal theory or factual allegations used to support a claim").

"When a claim is not exhausted because it has not been 'fairly presented' to the state

courts, but state procedural rules bar the applicant from seeking further relief in state courts,

the exhaustion requirement is satisfied because there is 'an absence of available State

corrective process.'  28 U.S.C. § 2254(b).  In such cases, however, applicants are considered

to have procedurally defaulted their claims and federal courts may not consider the merits of such claims unless the applicant establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse his or her default.  See Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)."  McCandless, 172 F.3d at 260.

To demonstrate "cause" for a procedural default, a petitioner must point to some objective external factor which impeded his efforts to comply with the state's procedural rule.  See Murray v. Carrier, 477 U.S. 478, 488 (1986).  "Prejudice" will be satisfied only if he can demonstrate that the outcome of the state proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law.  See Lockhart v. Fretwell, 506 U.S. 364, 366 (1993).

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," Murray, 477 U.S. at 496, then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice.  Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Wenger v. Frank, 266 F.3d 218, 224 (3d Cir. 2001).  The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency.  Bousley v. United States, 523 U.S. 614, 623 (1998); Murray, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt.  Hubbard v. Pinchak, 378 F.3d

9

333, 339-40 (3d Cir. 2004).

Ground Two, that PCRA counsel was ineffective in failing to call Mr. Oldt as a witness at the PCRA hearing to testify to his relationship with Judge Butts, was not presented at any stage of the state court proceedings.[1]   (Doc. 2, p. 24).  As noted *supra*, when a claim is not exhausted because it has not been fairly presented to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, as is the case here, the exhaustion requirement is satisfied because there is "an absence of available State corrective process."  28 U.S.C. § 2254(b).  However, the claim is procedurally defaulted and a merits review is precluded unless petitioner establishes cause and prejudice or a fundamental miscarriage of justice to excuse the default.  See Coleman, 501 U.S. at 750.

Gray seeks to be excused from the procedural default based on the Supreme Court case of Martinez v. Ryan, 566 U.S. 1, ⸺, 132 S.Ct. 1309, 1320 (2012).  (Doc. 2, p. 25).

> In Coleman, the Supreme Court held that attorney error during state collateral proceedings does not constitute cause to excuse the procedural default of a claim later raised in habeas.  Id. at 752–53, 111 S.Ct. 2546. The Court reasoned that "[t]here is no constitutional right to an attorney in state post-conviction proceedings," id. at 752, 111 S.Ct. 2546 (citing Pennsylvania v. Finley, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987)), and when a prisoner has no right to counsel he bears the risk of attorney error causing a procedural default, id. at 752–54, 111 S.Ct. 2546 (citing Murray v. Carrier, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed. 2d 397 (1986)).

> However, a "prisoner may obtain federal review of a defaulted claim by showing

---

[1]Although Gray includes trial counsel's alleged ineffectiveness in the heading of Ground Two, he clarifies that trial counsel's ineffectiveness on the recusal issue was raised in separate grounds; pertinent to this ground is PCRA counsel's ineffectiveness in failing to call Mr. Oldt at the PCRA hearing.  (Doc. 2, p. 24).

cause for the default and prejudice from a violation of the federal law." Martinez, [v. Ryan, 566 U.S. 1, ——, ] 132 S.Ct. [1309,] 1316 [(2012)].  In Martinez, the Court recognized a "narrow exception" to Coleman's statement "that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default." 566 U.S., at ——, 132 S.Ct. [1309], at 1315 [2012].

Norris v. Brooks, 794 F3d 401, 404-05 (3d Cir. 2015).  Martinez specifically states that:

> Allowing a federal habeas court to hear a claim of ineffective assistance of trial counsel when an attorney's errors (or the absence of an attorney) caused a procedural default in an initial-review collateral proceeding acknowledges, as an equitable matter, that the initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim. From this it follows that, when a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit. Cf.  Miller-El v. Cockrell, 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (describing standards for certificates of appealability to issue).

Martinez, 132 S.Ct. at 1318-19.  The Third Circuit expounded on the exception as follows:

> The Martinez Court made clear, however, that this is a "narrow exception." Id. Most importantly, the Court stated that the exception applies only to attorney error in initial-review collateral proceedings, not appeals from those proceedings. Id. at 1320.  And the Court clarified that the exception applies only to cases in which the state formally requires prisoners to raise claims of ineffective assistance of trial counsel on collateral review rather than direct appeal. Id.  The reason for these caveats, it seems, is that the Court was concerned only about cases in which the error of a prisoner's collateral review attorney results in "no state court at any level" hearing the prisoner's claim and the claim being defaulted for purposes of

habeas review in federal court.   Id. at 1316.  Outside of these "limited circumstances," Martinez made clear that Coleman remains the law. Id. at 1320.

Norris, 794 F.3d at 404-05.

Gray's reliance on Martinez is misplaced.   Martinez unequivocally applies only to ineffective assistance of trial counsel claims.  Gray, however, seeks to be excused from the default based on the ineffectiveness of his PCRA counsel's decision not to call a witness during the PCRA hearing, not PCRA counsel's failure to raise an ineffective assistance of trial counsel claim during the state collateral proceedings.  Specifically, he asserts that because Judge Butts' PCRA hearing testimony concerning her relationship with Mr. Oldt sharply contradicted statements made during the recusal proceedings, PCRA counsel was ineffective in failing to call Mr. Oldt to explore his relationship with Judge Butts.  (Doc. 2, p. 25).  Clearly, Martinez does not apply and Gray is unable to establish cause.  In the absence of cause, the court will not address the issue of prejudice.  In turn, the miscarriage of justice exception is inapplicable because Gray has not provided new reliable evidence of his actual innocence.  Consequently, the claim is procedurally defaulted and federal habeas relief is precluded.

In any event, even if Gray were to overcome the procedural bar, the merits of this claim are not able to be reviewed in a federal habeas proceeding.  Freestanding claims of ineffective assistance of PCRA counsel are not cognizable on federal habeas review.  28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising

under section 2254."); see also Coleman, 501 U.S. at 722, 752–53; Pennsylvania v. Finley, 481 U.S. 551, 555–56 (1987); Holman v. Gillis, 58 F. Supp.2d 587, 597 (E.D.Pa. 1999) (finding that "a claim of ineffective assistance of PCRA counsel is not cognizable in a federal habeas corpus petition because the right to effective assistance of PCRA counsel exists pursuant to state law, and is not mandated by the Constitution or laws or treaties of the United States.").

    2.    <u>Waiver</u>

If a petitioner fairly presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted.  See Coleman, 501 U.S. at 750; Harris v. Reed, 489 U.S. 255, 260–64 (1989).  "A federal habeas court will not review a claim rejected by a state court 'if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment.' "  Beard v. Kindler, 558 U.S. 53, 56 (2009) (quoting Coleman, 501 U.S. at 729).[2] "A state rule provides an adequate and independent basis for precluding federal review if (1) the rule speaks in unmistakable terms; (2) all state appellate courts refused to review the petitioner's claims on the merits; and (3) their refusal was consistent with other decisions."

---

[2]Ordinarily, a state prisoner seeking federal habeas relief must first exhaust available state court remedies, thereby affording those courts "the first opportunity to address and correct alleged violations of [the] prisoner's federal rights."  Coleman, 501 U.S., at 731.  The adequate and independent state ground doctrine furthers that objective, for without it, "habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court."  Id., at 732.

Nara v. Frank, 488 F.3d 187, 199 (3d Cir. 2007) (citations omitted).  The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits.  See Wainwright v. Sykes, 433 U.S. 72, 81-82, 90 (1977).

Ground Nine of Gray's petition, that PCRA counsel was ineffective for failing to raise the cumulative effect of previous counsel's errors, was deemed waived by the Superior Court because he failed to raise the claim in his amended PCRA petition or supporting brief.  (Doc. 1-1, pp. 24-25; Doc. 2-1, p. 23).  In rejecting the claim, the court cited the case of Commonwealth v. Bedell, 954 A.2d 1209, 1216 (Pa. Super. 2008) which states that "claims not raised in PCRA court are waived and cannot be raised for the first time on appeal."  (Doc. 1-1, p. 25).

The rule upon which the Superior Court relied provides an adequate and independent basis for precluding federal review and speaks in unmistakable terms.  The court relied on the Bedell case which, in turn, relied on a procedural rule as well as case law.  Specifically, the Bedell court found that "[a]s this claim was never raised before the PCRA court, it cannot be raised for the first time on appeal.  See Pa.R.A.P. 302(a) (stating that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal."); Commonwealth v. Edmiston, 578 Pa. 284, 851 A.2d 883, 889 (2004) (reiterating that "[c]laims not raised in the PCRA court are waived and cannot be raised for the first time on appeal[.]")."  Bedell, 954 A.2d at 1216.  The decision not to consider the merits is consistent with the law of the jurisdiction.  Further, all state appellate courts refused to review the claims on the merits.  It is clear that the Superior Court's refusal to consider Gray's

cumulative ineffective assistance of counsel claim was based on an independent and adequate state rule and, as such, the claim is procedurally defaulted and federal review is barred.

Gray again relies on the Martinez case in attempting to excuse the default arguing that default emanates from PCRA counsel's failure to raise trial counsel's ineffectiveness. It appears that the default may have resulted from PCRA counsel's failure to pursue the claim in collateral proceedings. However, to overcome the default, a petitioner must also demonstrate that the underlying ineffective assistance of trial counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit. Martinez, 132 S.Ct. at 1318-19. Gray is unable to clear this hurdle. Cumulative error only warrants habeas relief where a petitioner can show that he was actually prejudiced. Albrecht v. Horn, 485 F.3d 103, 139 (3d Cir. 2007). A petitioner seeking to make out a cumulative error claim must therefore show that the errors committed at trial together had a substantial and injurious effect or influence in determining the verdict, Fahy v. Horn, 516 F.3d 169, 205 (3d Cir. 2008), and that these errors, in combination, would be sufficient to meet the Strickland prejudice prong. Albrecht, 485 F.3d at 139. As this Court concludes, *infra*, Gray has failed to demonstrate that counsel was deficient, and certainly has not demonstrated that any of trial counsel's alleged failures resulted in actual prejudice. Consequently, he is unable to show that the underlying ineffective assistance of counsel claim has any merit. Review of this claim is therefore precluded.[3]

---

[3]Further, to the extent that he attempts to advance a freestanding claim of ineffective assistance of PCRA counsel, as noted previously, such a claim is not cognizable on federal habeas

The Superior Court also deemed waived Gray's Third Ground, "that the PCRA court erred in not finding his 'constitutional rights were violated by the Commonwealth's assertion of a knowingly baseless death penalty charge against him to secure his waiver of a jury trial." (Doc. 1-2, p. 7).  The court concluded that "[u]nder the PCRA, 'an issue is waived if the petitioner could have raised it but failed to do so before trial, [or] on appeal[.]' Appellant could have raised this issue on direct appeal, but did not.  See 42 Pa.C.S. § 9544(b).

The procedural rule upon which the court relied provides an adequate and independent basis for precluding federal review.  The rule speaks in unmistakable terms stating that "[f]or purposes of this subchapter, an issue is waived [for PCRA purposes] if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post conviction proceeding."  42 Pa.C.S. § 9544(b).  Moreover, Pennsylvania law also provides that failure to preserve an issue for appeal results in the denial of review on appeal.  Sistrunk v. Vaughn, 96 F.3d 666, 671 (3d Cir. 1996 (citing Pa.R.App.P. 302(a) and Commonwealth v. Labron, 543 Pa. 86, 669 A.2d 917, 919 (1995), rev'd on other grounds, 518 U.S. 938, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996) (finding that the rules dictate that an issue not preserved on appeal will not be considered by a subsequent appellate court).  The decision not to consider the merits of this claim is consistent with the law of the jurisdiction.  Further, all state appellate courts refused to review the claims on the merits.  It is clear that the Superior Court's refusal to consider the claim was based on an

---

review.  28 U.S.C. § 2254(i).

16

independent and adequate state rule and, as such, the claim is procedurally defaulted and federal review is barred.

Notwithstanding this conclusion, Gray can avoid the bar by showing cause for the default and prejudice attributable thereto, or by demonstrating that the failure to consider the federal claim will result in a fundamental miscarriage of justice.  See Harris, 489 U.S. at 262. In an attempt to overcome the bar, Gray again relies on Martinez.  However, Martinez is inapplicable because the default involves a claim that could have been raised on direct appeal, not a claim that could only be raised for the first time in collateral proceedings.  Gray has failed to demonstrate any cause or prejudice or that he will suffer any fundamental miscarriage of justice as a result of this Court's failure to review his claim.  Any review of this claim is therefore precluded.

The remaining ineffective assistance of counsel grounds will be addressed on the merits.

## B.    Merits Review

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), federal courts reviewing a state prisoner's application for a writ of habeas corpus may not grant relief "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"[B]ecause the purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction," Greene v. Fisher, — U.S. — , 132 S.Ct. 38, 43 (2011) (internal quotations and citations omitted), "[t]his is a difficult to meet and highly deferential standard . . . which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (internal quotation marks and citation omitted). The burden is on Gray to prove entitlement to the writ. Id.

A decision is "contrary to" federal law if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A decision is an "unreasonable application" of federal law if the state court identified the correct governing legal rule but applied the rule to the facts of the case in an objectively unreasonable manner. Renico v. Lett, 559 U.S. 766, 773 (2010). A decision is based on an "unreasonable determination of the facts" if the state court's factual findings are objectively unreasonable in light of the evidence presented to the state court. Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

The test for ineffective assistance of counsel is a well settled and firmly established one containing two components. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."

Strickland v. Washington, 466 U.S. 668, 687 (1984).  "Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Id.

The state court set forth the following general principles governing ineffective assistance of counsel claims:  "To prevail on a claim alleging counsel's ineffectiveness under the PCRA, Appellant must demonstrate(1) that the underlying claim is of arguable merit; (2) that counsel's course of conduct was without reasonable basis designed to effectuate his client's interest; and (3) that he was prejudiced by counsel's ineffectiveness, *i.e.* there is a reasonable  probability that but for the act or omission in question the outcome of the proceedings would have been different.  *Commonwealth v. Timchak*, 69 A.3d 765, 769 (Pa. Super. 2013) (citations omitted)."  (Doc. 1-1, p. 25).  The United States Court of Appeals for the Third Circuit has ruled that this standard is not "contrary to" Strickland.  Werts v. Vaughn, 228 F. 3d 178, 203 (3d Cir. 2000).  Therefore, "the appropriate inquiry is whether the Pennsylvania courts' application of Strickland to [petitioner's] ineffectiveness claim[s] was objectively unreasonable, *i.e.*, the state court decision evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under Strickland."  Id. at 204.

1.    Recusal of Trial Judge

In Ground One, Gray contends that trial counsel was ineffective in that he "failed to request the recusal of Judge Butts due to the judge's personal relationship with the victim's

family and a trial witness . . . " (Doc. 2, p. 16). He asserts that "[i]n a case where the judge had a previous relationship with the uncle of the victim, [Mr. Oldt,] whom was also a trial witness, whom had carried the limp body of the victim from the fire, and where that judge had already heard prejudicial testimony and evidence during pre-trial suppression hearings, and would now be the trier-of-fact in a bench trial, counsel clearly should have moved for the recusal of Judge Butts." (Id. at 24). The issue was raised in the context of the PCRA proceedings.

Gray first contends that the state court applied the incorrect recusal standards in rejecting his ineffective assistance of counsel claim. Due process requires recusal when the likelihood of bias on the part of the judge "is too high to be constitutionally tolerable." Caperton v. A.T. Massey Coal, Co., 556 U.S. 868, 872 (2009) (quoting Withrow v. Larkin, 421 U.S. 35, 47 (1975). The Court asks not whether a judge harbors an actual, subjective bias, but instead whether, as an objective matter, "the average judge in his position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.'" Caperton, 556 U.S., at 881. Where a judge forms opinions on the basis of facts introduced in the course of current or prior proceedings, there is no bias or partiality unless the judge "display[s] a deep-seated favoritism or antagonism that would make fair judgment impossible." Liteky v. United States, 510 U.S. 540, 555 (1994). "[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." Liteky, 510 U.S. at 555. The Superior Court set forth the following principles concerning recusal:

20

> When a trial court doubts its ability to preside impartially in a criminal case or when the court believes its impartiality can be reasonably questioned, the court should recuse itself.  The recusal decision will be disturbed on appeal only if the trial court abused its discretion.  An abuse of discretion is not merely an error in judgment.  Rather, it involves bias, ill will, manifest unreasonableness, misapplication of law, partiality, and/or prejudice.

*Commonwealth v. King*, 990 A.2d 1172, 1180 (Pa. Super. 2010) (citations omitted), appeal denied, 53 A.2d 50 (Pa. 2012).  In considering a recusal motion,

> the judge makes an independent, self-analysis of the ability to be impartial. If content with that inner examination, the judge must then decide "whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary."  This assessment is a "personal and unreviewable decision that only the jurist can make."  "Once the decision is made, it is final . . . "

> This Court presumes judges of this Commonwealth are "honorable and fair and competent," and, when confronted with a recusal demand, have the ability to determine whether they can rule impartially and without prejudice.  The party who asserts a trial just must be disqualified bears the burden of producing evidence establishing bias, prejudice, or unfairness necessitating recusal, and the "decision by a judge against whom a plea of prejudice is made will not be disturbed except for an abuse of discretion."

*Commonwealth v. Thomas*, 44 A.3d 12, 24 (Pa. 2012) (citation omitted).

(Doc. 1-2, pp. 1, 2).  Contrary to Gray's assertion, the state court recusal standards comport with applicable federal precedent.

Gray also contends that "[t]he appearance of impropriety in [his] proceedings proves that counsel was ineffective for failing to move for recusal."  (Doc. 2, p. 19).  The Superior Court detailed the PCRA hearing testimony of Judge Butts in the following manner:

> [Judge Butts] joined the Old Lycoming Township Volunteer Fire Company in 1993 and worked as an emergency medical technician ("EMT").  N.T. PCRA H'rg, 2/14/11, at 135.  She described Mr. Oldt, who was in the fire-fighting

department, as an acquaintance, not a friend. *Id.* at 144. Mr. Oldt was never "involved in incidents where [Judge Butts] responded to." *Id.* at 137-38. Judge Butts knew Mr. Oldt from working at the carnival every year, and her communication with him was asking him to get hamburgers or hotdogs. *Id.* at 138. Before she became a judge, she also said hello to him at general membership meetings. *Id.* Furthermore, Judge Butts was on a banquet committee with Mr. Oldt in 2002 and 2003, which was around the time of the arson and trial. *See id.* There were six or seven people on the committee, they met once a week for "a couple months," and Judge Butts did not go to all the meetings. *Id.* at 139. The judge could not recall whether she saw Mr. Oldt at the banquet committee meetings. *Id.* at 139-40. Although she knew Mr. Oldt was married, she did not have a social relationship with him, did not know if he had children or where he lived, and they did not discuss their personal lives with each other. *Id.* at 140-41. At the time Judge Butts was assigned to Appellant's case, she did not know Mr. Oldt's nephew was the victim in the case. *Id.* at 141; *see also id.* at 145.

Judge Butts did not believe there was anything in her relationship with Mr. Oldt "that created an actual conflict of interest or an appearance of impropriety." Id. at 142. Judge Butts believed that even though she belonged to the fire company, she could be fair and impartial because she "knew nothing about this" case. *Id.* at 143. Additionally, she did not believe Mr. Oldt's testimony was "an integral part of [the] prosecution insofar as the determination of guilt or innocence." *Id.* at 144. If Judge Butts believed there was a conflict of interest or appearance of impropriety, she would have recused from the case. *Id.* at 143.

On cross-examination, Judge Butts denied that she and Mr. Oldt were "collegue[s]" in the fire department, explaining that she was an EMT and not an active member, and Mr. Oldt was in the fire division. *Id.* at 144. When asked why she referred to him as "Matt," Judge Butts responded "That's because – that was his name. I've never called him Mr. Oldt but proper court protocol is to call him Mr. Oldt so I apologize." *Id.* at 146. Judge Butts previously recused from an embezzlement case involving the fire department "because there was a financial interest involved in the fire company, [and] the appearance of having someone in authority being so closely associated with it [ ] may lead to an improper appearance." *Id.* at 146-48. Finally, Judge Butts also recused from cases involving witnesses from the hospital, whom she knew from her "past association as an EMT." *Id.* at 147.

(Doc. 1-2, pp. 3-5). The Superior Court agreed with the findings of the PCRA court that

"although Judge Butts knew the witness outside the case proceedings, she made an

independent, self -analysis of whether she would be impartial and whether there would be an appearance of impropriety." (Id. at pp. 6, 7).   Gray contends here, as he did in state court, that "the PCRA hearings actually revealed facts indicating even a deeper connection between the bench trial judge and a witness, therefore strengthening the appearance of impropriety." (Doc. 2, pp. 19-20).   He points to joint service on the fire company committee, the referral to Oldt as "Matt," and the yearly fire company carnival.  (Id.)   This  contention was flatly rejected by the state court.  The court stated "[o]n appeal, Appellant recasts the same testimony considered by the PCRA court as indicative of a closer connection between Judge Butts and Mr. Oldt.  We reject Appellant's characterization of the evidence, where he ignores Judge Butts' repeated testimony that she and Mr. Oldt had limited contact and the Judge's knowledge of Mr. Oldt's personal life was minimal."   (Id. at 6).  The court concluded that Gray "did not establish his underlying claim had arguable merit," and hence, he was unable to establish that his counsel was ineffective for failing to move to recuse Judge Butts.  (Id.).

We conclude that the Superior Court's factual findings are objectively reasonable in light of the evidence presented to the PCRA court (Doc. 19-8), and reject Gray's contention that there was a deeper connection between Judge Butts and Mr. Oldt than indicated by the state courts' depictions of the facts.  Further, as noted *supra*, Gray has failed to establish that the state court's determinations on the underlying recusal claim and the ineffective assistance of counsel claim were contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent.  Consequently, he is not entitled to relief on this claim.

2.    First Degree Murder Charge and Jury Trial Waiver

In Grounds Four and Five, Gray argues that counsel was ineffective in pre-trial proceedings by failing to make a pre-trial challenge to the first degree murder case and advising him to waive his right to a jury trial.  (Doc. 2-1, pp. 8-15).  In Ground Six, he asserts that counsel was ineffective for failing to move for a mistrial when the Commonwealth dropped the first-degree murder charge.  (*Id.* at 15-17).

He first contends that the PCRA court applied an erroneous legal standard in analyzing his jury trial waiver claim by requiring him to show he would have received a better result with a jury, rather than demonstrate whether the result of the waiver proceeding would have been different.  (Doc. 2-1, pp. 8-10).  In citing the seminal jury trial waiver case, Commonwealth v. Mallory, 941 A.2d 686, 702-03 (Pa. 2008), the Superior Court applied the following standard of review:  "When a defendant claims that his jury waiver was not knowing and voluntary due to his counsel's ineffectiveness, to prove actual prejudice the defendant must demonstrate a reasonable probability that the result of the waiver proceeding would have been different absent counsel's ineffectiveness; he does not have to demonstrate that the outcome of a jury trial would have been more favorable than the bench trial. *Mallory*, 941 A.2d at 702-03."  (Doc. 1-2, p. 9).  Although the Superior Court agreed that the PCRA court incorrectly applied the standard, no relief is warranted in this regard because the PCRA court error was rectified by the Superior Court's application of the correct standard. (Id.)

He also argues "counsel's erroneous advice [to waive a jury trial] revealed itself in his

24

PCRA testimony where counsel admits: (1) that he only spoke to Gray for five to 10 minutes concerning Gray's waiver of what is the most fundamental right of our justice system; (2) that he did not believe, pre-trial, that this was a first degree case; (3) that his first goal was to get the death penalty dropped, <u>then</u> to investigate any defense to the charges; and (4) that he was "bluffed' into waiving Gray's jury trial right."  (<u>Id.</u> at 10) (emphasis in original) (citations omitted).  He further argues that "there was no allegation or evidence of intent– not in statements, reports or testimony – not pre-trial or during trial.  A simple cursory reading of the discovery file shows that the Commonwealth did not have evidence, nor would it be able to argue at trial, intent, the most distinguishing factor necessary for a first degree conviction." (<u>Id.</u> at 11).

During the PCRA hearing, trial counsel testified that, prior to the plea negotiations, he told the prosecutor "that it shouldn't be a murder one case" because Appellant "did not cause the fire," co-defendant Young did "all the action," and at most, Appellant "would have been an accomplice after the fact because they left together," not a co-conspirator or "an accomplice before the fact."  (Doc. 1-2, pp. 10, 11) (citations omitted).  He further argued that the blanket, which the prosecution alleged was lit by Gray, "'was already lit' and therefore Appellant's actions 'did not add to the fire[;] it was going to go up regardless of his actions."  (*Id.* at 10, n. 18).

"However, '[a]t all times during those discussions' the prosecutor 'indicate[d] he believed it was a first degree murder case' 'and he was moving forward with it.'  The prosecutor also argued there were aggravating factors, including there being multiple victims,

including a child victim, 'the custody situation' between Young and his ex-girlfriend, and

Appellant's providing a lighter to co-defendant Young and then himself lighting a blanket

afire."  (Id. at pp. 10, 11).

After recounting the above testimony, the Superior Court's concluded as follows:

> In light of the foregoing, we disagree with Appellant's premise that "trial counsel conceded he did not sufficiently analyze the true existence of a first-degree case." [ ].  Instead, counsel had discussions with the Commonwealth concerning the degree of homicide and advocated for a lesser charge. Furthermore, to the extent Appellant argues there was insufficient evidence to charge him with first-degree murder, we note that a charge of general homicide charge [sic] had endured the preliminary hearing.  *See Commonwealth v. Landis*, 48 A.3d 432, 444 (Pa. Super. 2012) (en banc) (stating that at preliminary hearing, Commonwealth must show *prima facie* case of sufficient probable cause that defendant committed offense and evidence is such that if presented at trial and accepted as true, judge would be warranted in allowing case to go to jury). Additionally, the following are statutory aggravating factors for sentencing for a first-degree murder offense: that the victim was under twelve years of age, that "[t]he defendant committed a killing while in the perpetration of a felony," and that "[i]n the commission of the offense the defendant knowingly created a grave risk of death to another person in addition to the victim."  42 Pa. C.S. § 9711(d)(6), (7), (16).

> We further note that the PCRA court relied on reasoning in *Commonwealth v. Buck*, 681 A.2d 185 (Pa. Super. 1996).  PCRA ct. Op. at 19.  In that case, this Court stated:

>> Pennsylvania law is quite explicit that "the prosecution has no inherent burden to prove pretrial that aggravating factors exist . . . "  This is so because the witnesses' trial testimony often differs from the statements given during pretrial interviews or hearings.  It is impossible for anyone to know the precise nature of the evidence that will be adduced at trial until after the witnesses have actually testified.  Thus, it is inappropriate to issue a pretrial ruling on whether that testimony will be sufficient, at the time of the penalty phase, to establish the factors identified in the Commonwealth's Notice of Aggravating Circumstances . . .   [I]t is improper for a court of common pleas to conduct a pretrial inquiry concerning the sufficiency of the Commonwealth's proposed evidence

regarding the existence of aggravating factors . . .

*Buck*, 681 A.2d at 187-88 (citations omitted).

We agree with the PCRA court that Appellant has not shown that a pre-trial motion to dismiss the first-degree murder charge would have succeeded.  *See* PCRA Ct. Op. at 20.  Accordingly, we hold counsel was not ineffective for not making a pre-trial challenge to this charge or the Commonwealth's notice that it would seek the death penalty.  For the same reasons, we also reject Appellant's claim that counsel's advice in whether to waive a jury trial was faulty because [he] knew or should have known the first-degree murder charge was "illusory."  *See* Appellant's Brief at 36.  Additionally, Appellant acknowledges that counsel's " 'first goal' was getting the death penalty dropped." *Id.* at 33.  Considering this statement in light of counsel's plea negotiations with the Commonwealth, we further hold Appellant has not shown "counsel's course of conduct was without a reasonable basis designed to effectuate his client's interest."  *See Timchak*, 69 A.3d at 769.  Having failed to establish this factor, Appellant's ineffectiveness claim fails.  *See id.*

(Doc. 1-2, pp. 11, 12).

Gray also contends that counsel was ineffective in failing to respond with a motion for a mistrial to the prosecution's concession during summation that it had insufficient evidence to sustain a first degree conviction.   (Doc. 2-1, p. 16).  The Superior Court disposed of the issue in the following manner: "Appellant reasons that the Commonwealth's action [in dropping the first-degree murder charge], "resulted in a defective waiver of his right to a jury trial.'  He also cites trial counsel's PCRA hearing testimony that he believed the Commonwealth's 'comments were 'disingenuous' and that he 'wasn't too happy with [the prosecutor].'  For the reasons cited above in our disposition of Appellant's last two claims, we find no relief is due." (Doc. 1-2, p. 13; Doc. 2-1, p. 16).

The Superior Court's factual findings on each of the above ineffective assistance

claims are objectively reasonable in light of the evidence presented to the PCRA court.

(Doc. 19-8).  Further, the state court's determinations on the underlying challenges (pre-trial

challenge to the first degree murder charge, the jury trial waiver claim, the failure to move

for a mistrial), and the ineffective assistance of counsel claims based on these underlying

challenges, were neither contrary to, nor involved an unreasonable application of, clearly

established United States Supreme Court precedent.   Consequently, no relief is warranted on

Grounds Four, Five and Six.

3.   <u>Advice Not to Testify</u>

In Ground Seven, Gray contends that trial counsel's "advice to remain silent in this

two-witness case, due to the purported 'weak' nature of the defendant, with no attempt to

prepare him was indeed unreasonable."  (Doc. 2-1, p. 19).  He argues that, had he testified, he

"would have been able to put into context and explain the statements made to the police

during the interrogation, as he convincingly was able to do at the PCRA hearing.  In short,

Gray's testimony was critical to deny the charges, explain his statements to the police, rebut

the testimony of Young, and, more importantly, give the trial court his own personal version

as to what happened inside the residence that night."  (<u>Id.</u> at 18).

In analyzing the claim, the Superior Court applied the following standard:  "The

decision of whether or not to testify on one's own behalf is ultimately to be made by the

defendant after full consultation with counsel.  In order to sustain a claim that counsel was

ineffective for failing to advise the appellant of his rights in this regard, the appellant must

demonstrate either that counsel interfered with his right to testify, or that counsel gave

specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on

his own behalf. *Commonwealth v. Michaud*, 70 A.3d 862, 869 (Pa. Super. 2013) (citation

omitted)." (Doc. 1-2, p. 14).

This standard comports with federal standards of review.  It is well established that the

right of a defendant to testify on his or her behalf at his or her own criminal trial is rooted in

the Constitution.  Rock v. Arkansas, 483 U.S. 44, 49-53 (1987).  This right is personal and

thus only the defendant may waive it.  See Jones v. Barnes, 463 U.S. 745, 751 (1983) (stating

that "[T]he accused has the ultimate authority to make certain fundamental decisions

regarding the case, [including] as to whether . . . to testify in his or her own behalf.").

To prevail on an ineffective assistance claim premised on trial counsel's alleged

refusal to allow a client to testify, the petitioner must do more than just assert that his lawyer

refused to allow him to testify. "It is extremely common for criminal defendants not to

testify" and a defendant merely claiming that he was denied the right to testify in his own

defense is thus "too facile a tactic to be allowed to succeed."  Underwood v. Clark, 939 F.2d

473, 475 (7th Cir. 1991).  "[I]n a subsequent collateral attack on the conviction the defendant

must produce something more than a bare, unsubstantiated, thoroughly self-serving, and none

too plausible statement that his lawyer (in violation of professional standards) forbade him to

take the stand." Id. at 476.

The Superior Court addressed the claim as follows:

The PCRA court summarized the following PCRA hearing testimony by
trial counsel.  Counsel 'discussed with [Appellant] the advantages and
disadvantages of testifying at trial,' including 'that the fact finder would have an

opportunity to hear from [Appellant], particularly with regard to [setting fire to] the afghan.' Counsel was concerned, however, that Appellant 'would not come across well as a witness whether in front of a judge or a jury' and 'would not be able to withstand vigorous cross-examination by the prosecution in light of the fact that counsel did not view [Appellant] as a person with strong will." Counsel instead 'perceived that he could extract helpful information from the cross examination of [co-defendant] young and . . . other witnesses.'

The PCRA court held that counsel's advice was not unreasonable. It noted that Appellant 'had given a taped statement to the police in which he vacillated and back-tracked until he finally came forward with his version of the events in question,' and that '[c]learly such inconsistencies would have provided fodder for cross-examination.' The PCRA court further considered that the trial court 'ultimately hear[d Appellant's] version of the events by listening to the recorded statements of both [Appellant and his co-defendant] which were played during the trial.'

Appellant's arguments on appeal ignore trial counsel's testimony that he and Appellant 'had more than one discussion concerning' whether Appellant would testify at trial. Furthermore, contrary to Appellant's arguments on appeal, counsel testified that although he 'did not type up a formal cross examination,' he 'talked with [Appellant] about the facts[,] ask[ed] him about the case itself [and] saw how he would react.'

Furthermore, we agree with the PCRA court that Appellant ignores 'the on-the-record colloquy at trial during which he stated under oath that he had consulted with trial counsel regarding his rights in this regard and that the decision not to testify was his and his alone.' In his colloquy, Appellant answered 'yes' to the questions of whether he 'had a chance to talk with [his] attorneys about whether [he] should testify' and whether he 'had plenty of opportunities to speak with [his] attorneys [and] had enough time to think about it[.]' Appellant further averred, 'It was my decision,' and agreed that it was 'of [his] own free will that [he] decided to exercise [his] right and not testify.' In light of this record, we disagree with Appellant's argument that counsel gave harmful advice which caused his decision not to testify at trial. Accordingly, we hold Appellant has not proved his underlying claim has merit, and has not established ineffectiveness. *See Timchak*, 69 A.3d at 769.

(Doc. 1-2, pp. 14-16) (record citations omitted).

On these facts, the Superior Court applied federal law in a reasonable manner in

concluding that Gray's trial counsel did not render ineffective assistance under the "objective reasonableness" standard articulated by the Supreme Court in Strickland.  See, e.g., United States v. Teague, 953 F.2d 1525, 1534-35 (11th Cir. 1992) (holding that counsel's performance was not constitutionally deficient, in case in which defendant was advised of his right to testify, but was advised that he should not exercise that right because it would be unwise and unnecessary).  As this decision was not "contrary to . . . clearly established Federal law," or an "unreasonable application of" such law, 28 U.S.C. § 2254(d)(1), habeas relief under § 2254(d)(1) is unwarranted.  See Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 888-91 (3d Cir. 1999) (en banc) (establishing the analytical framework, under AEDPA, for reviewing the legal conclusions reached by state courts based on federal law)

4.    Intoxication Defense

Gray argues that trial counsel's failure to properly investigate and present an intoxication defense was undeniably prejudicial.  (Doc. 2-1, pp. 19-21).  Specifically, "[g]iven the extraordinary amount of evidence presented on the subject, an intoxication defense was a viable and valid defense strategy to first degree murder.  Indeed, Young unequivocally testified that both he and Gray at the time were 'pretty drunk.'  Trial Tr. at 86. Despite the fact that Gray's intoxication was replete throughout the trial and sufficient evidence was adduced to support a finding that Gray was intoxicated, such a defense was never pursued or argued.  Pursuing an intoxication defense would have provided the trier-of-fact with a choice in the degree of homicide."  (Id. at 21).  He further argues that the PCRA court's determination that such a defense was presented during the trial "is belied by the

facts." (Doc. 2-1, pp. 19-20).

In addressing the identical arguments, the Superior Court found as follows:

> Appellant disputes the court's finding that an intoxication defense was presented at trial, stating, "That finding is belied by the facts." Appellant's Brief at 40. His ensuing discussion, however, is that "the record was replete with evidence that [he] and others were drinking throughout the day, and indeed, intoxicated," that trial counsel was aware, prior to trial, that Appellant was drinking on the evening in question, and that Appellant testified he had never discussed an intoxication defense with counsel. We find no relief is due.

> As Appellant notes in his brief, "[v]oluntary intoxication may reduce murder from first degree to third degree." *Id.* at 41 (citing *Commonwealth v. Serge*, 837 A.2d 1255 (Pa. Super. 2003); *See Serge*, 837 A.2d at 1266 ("[V]oluntary intoxication presents only diminished capacity defense, which at best reduces the degree of homicide from first to third degree."). He maintains that because his first-degree murder "charge remained throughout the duration of the trail[,]" he was "eligible to present this defense" Appellant's Brief at 41 n. 14. Appellant contends that counsel's failure to pursue an intoxication defense was prejudicial because it "was a viable defense strategy to the first degree murder charge," and "the court could have determined that [his] behavior amounted only to third degree murder." (*Id.* at 42, 43).

> We disagree that Appellant suffered any prejudice; the fact remains that the Commonwealth ultimately withdrew the first-degree murder charge, thereby rendering irrelevant any intoxication defense. *See Timchak*, 69 A.3d at 769; *Serge* 837 A.2d at 1266. We further reject Appellant's claim that the PCRA court erred in finding intoxication was presented as a defense. Indeed, Appellant cites the PCRA court's reference to the record evidence of his drinking that evening. Appellant's Brief at 41; *see* PCRA Ct. Op. at 18 (citing defense counsel's cross-examination of co-defendant Young and another witness about Appellant's drinking beer throughout the evening). Accordingly, we agree that Appellant has failed to establish a meritorious ineffective claim.

(Doc. 1-2, pp. 17-18).

The state courts' disposition of this ineffectiveness claim is entirely reasonable,

especially in light of the "doubly" deferential standard with which we are to evaluate the

state court's conclusions on ineffectiveness claims.  <u>See</u> <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009).  <u>See</u> <u>also</u> <u>Harrington v. Richter</u>, 562 U.S. 86, 105 (2011). With that standard in mind, we are unable to find any basis upon which we could conclude that the Superior Court unreasonably interpreted and applied <u>Strickland</u> when it considered counsel's approach to the intoxication defense.

## IV.   Conclusion

For the reasons set forth above, the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 will be denied.

## V.   Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("C A"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  <u>Miller-El v. Cockrell</u>, 537 U.S. 322 (2003). Petitioner fails to demonstrate that a COA should issue.

The denial of a certificate of appealability does not prevent Gray from appealing the order denying his petition so long as he seeks, and obtains, a certificate of appealability from the court of appeals.  <u>See</u> Fed. R. App. P. 22(b)(1), (2).

A separate order will enter

**BY THE COURT:**


**s/James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**


Dated:        June 14, 2016